The IJ failed to apply the correct legal standard in analyzing Mr. Dang's CAT claim. In addition, the Board abused its discretion in denying his motion to reopen due to ineffective assistance of counsel. With respect to the CAT claim, the correct legal standard requires the IJ to consider all evidence relevant to the possibility of future torture. Here, the IJ discounted the bulk of the evidence and relied exclusively on a single sentence in the Profile on Asylum Claims, which states that unless the parent was a particularly prominent supporter of the government, family members are not likely to suffer persecution based on a family relationship. The IJ completely failed to consider how other factors, such as Mr. Dang's credible testimony regarding his political opinion and general country conditions, would affect the likelihood of torture. In Kamalthus, this Court has held that such country conditions alone can establish a claim under the Convention. Turning to the ineffective assistance issues, Mr. Dang's attorney should have, first of all, challenged the IJ's determination that Mr. Dang committed a particularly serious crime. Specifically, his attorney should have argued that the IJ failed to address the length of Mr. Dang's sentence, which was only six months, as required under Mater frantescu, that the IJ failed to address whether the circumstances of the crime indicate that he is a danger to the community, and that the IJ misrepresented the underlying facts of the conviction, including the number of times he touched the victim, whether his crime was premeditated, and whether he was aware of her age. The IJ also failed to consider any mitigating evidence as required by Mater of SS and the UNHCR Handbook at paragraph 157. Furthermore, Mr. Dang was clear on that question. One of the factors considered by the IJ was that Mr. Dang denied culpability. Now, why doesn't this count as considering the danger to the community factor? Well, that factor pertains more to the actual circumstances of the crime. The IJ still has to look. That might be one of the issues that the IJ could take into account, but that certainly doesn't constitute full consideration of that factor, because you certainly can't I think that's even a legitimate factor. It's not one of the factors As I understand it, there's a judgment that's supposed to be made about whether the crime was a particularly serious crime. What, does the individual's current attitude toward that crime count? I don't believe it does, Your Honor. It's certainly not one of the factors listed in Mater of frantescu. I mean, the IJ certainly can't reconsider Especially when he says, I didn't do it. Correct. I mean, it's one of those situations where the court is not allowed to re-examine whether he should have been convicted or not. But even the statements in the police report that supported the conviction are not consistent with what the IJ stated as the facts of the crime. So even if we ignore Mr. Dang's testimony that he didn't do it, and just look at the facts of which he was convicted, they do not match up to the facts that the IJ states in his decision. So the IJ clearly misrepresented the facts supporting this conviction, and that's a failure to apply the frantescu factors. Furthermore, Mr. Dang They're giving him ten minutes. That I know. Mr. Dang was clearly prejudiced by his former attorney's actions because, as this Court found in Afridi v. Gonzales, the failure to consider all the frantescu factors does constitute a legal error. And it necessarily follows that there was prejudice because the sole basis for the IJ's denial of withholding in this case was his determination that Mr. Dang had committed a particularly serious crime. Now, the lawyer said in his letter, essentially, there's no way this was going to succeed, and I thought about it, and I decided that it just wasn't going to work. Why does that amount to ineffective assistance? It doesn't seem like a crazy judgment that Well, given the clear legal error in this case, I mean, he should have appealed the whether this, how serious was this crime. This is a problem where the IJ failed to apply the correct legal standard. He didn't consider the length of the sentence. I mean, he didn't apply these very critical factors, and that in itself should have been, you know, the basis of an appeal. In addition, Mr. Coughlin was Suppose his view was, well, that may be, but it wasn't going to get anyplace because then the BIA was going to do the same thing and come to the conclusion that it was a particularly serious crime. There's just no way they were. So it doesn't really matter if the IJ erred. There was just no point to appealing it. No prejudice. Well, there is prejudice, Your Honor, because like I said, the IJ failed to apply the correct legal standard. His attorney could not have been sure that the board would agree. The attorney's job is to resolve all ambiguities in favor of his client, not to assume that the board will rule against his client. I mean, this is a case where this is not a case where somebody raped a child. This is a case where he touched her once on the chest. It was wrong. But this is not necessarily a particularly serious crime. He served only six months. Arguments could have been made. And all he's required to show here are plausible grounds. He does not. We don't have to show that, you know, he would clearly win on these claims. We just have to show that there are plausible grounds that his claim would have succeeded. And that shows a viable claim that that that he failed to pursue. There is clearly a viable claim here because for the reasons I've just stated, there was legal error. The board necessarily had to reverse this issue under Afridi v. Gonzales. He would have won this issue if it had been appealed. So I think there's necessarily prejudice in this case under Afridi. Kagan. Just to be technical, I'll give you a little extra time on this, but doesn't the – couldn't the board simply resolve the issue on its own at that point rather than reversing? Couldn't the board on its own just have applied the right legal standard? Didn't have to send it back to the IJ. The board could have simply reversed it, Your Honor. No. Could have not reversed it. Could have simply decided on its own that this was not a – that this was a particularly serious crime. It could have, but it never had the opportunity to do so. Okay. But it didn't have to reverse anything. It could have just looked at the statute. Right. But the procedural posture here is whether Mr. Deng's attorney was ineffective in even raising this issue with the board. I understand that. I was just trying to test out what you were saying. Go ahead. In addition, Mr. Deng's former attorney was ineffective by failing to submit an application for 212C relief after specifically representing – indicating to the court that he would do so. Under Landgraf, the relevant issue is whether applying the law eliminating 212C to Mr. Deng, quote, takes away or impairs vested rights under this – acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed. That's page 269 of Landgraf. Although various courts, including this one, have misinterpreted St. Cyr as requiring reliance, as part of the retroactivity analysis, reliance is not, in fact, required. If you look at the facts of Landgraf itself, there was no reliance in that case. The court found that the Civil Rights Act of 1991, which increased the penalties for unlawful sexual harassment, had a retroactive effect when applied to conduct that occurred before the passage of that law. In footnote 35 of Landgraf, the court specifically recognizes that, quote, unfair – or, sorry, concerns of unfair surprise and upsetting expectations are attenuated in the case of intentional employment discrimination, which has been unlawful for more than a generation. Nevertheless, the court found that there would be fairness concerns if the damages provision were retroactively applied to events preceding the clause in Act. And your claim is, therefore, to the commission of the crime? Correct. I mean, there's no reliance requirement. If the critical issue is – I understand that, but haven't we held directly that the commission of the crime is not a relevant – Armendez Montoya was to that effect, wasn't it?  Armendez Montoya was to that effect. Armendez Montoya is not – is not persuasive here because Armendez Montoya, it didn't – it didn't address this issue here with – I mean, the Landgraf analysis that – we're saying Armendez Montoya basically did not – is inconsistent with a long line of Supreme Court cases. I'm saying it's wrong, but in short – We're saying it's wrong, Your Honor. In short, it's wrong. Oh, I'm sorry. And Fernandez-Vargas is the most recent Supreme Court case that clarified that. But you don't have to go to Fernandez-Vargas for that, is what I'm trying to say. Starting in Landgraf, reliance was not required. Saints, you're confused. This circuit and a bunch of other circuits. Yeah, but that deals with retroactive punishment. Armendez found it was absurd, I think they used the word, that someone would not commit a crime if they knew that it was going to be punished in a certain way. And that's just false reasoning, because they don't need to show that they would not have committed the crime. I mean, that whole line of reasoning is – That's what it means, holds – I mean, it might – the case is there. I think it quotes another circuit in that, and that may well be – it may be absurd, but that's not the reasoning that applies. That reasoning is based on a reliance theory that's not needed. Just a minute. It is a case of our circuit. It is binding on us. Correct. It was binding on the lawyer. Okay. So what is it that he should have done? In the face of the case law, and what – and or why was there prejudice in the face of the case law? Well, Your Honor, because of the Supreme Court cases. If there are Supreme Court cases that contradict a case of this circuit, then his lawyer should have still made the argument based on – You're saying he should have preserved the issue and gone – He should have preserved the issue. And, I mean, Fernandez-Vargas – given Fernandez-Vargas, this court can – when there's an intervening Supreme Court decision that conflicts with the precedent of this circuit, this – this court, the panel of this court can follow the Supreme – the intervening Supreme Court decision rather than a prior – a prior precedent of this court. I think we hear – you hear your argument. Since you're running out of time, I'd like to ask a question about the refugee status. Your theory that Mr. Dang retains his refugee status has never been dealt with in an So, how was fair to raise this in effective assistance of counsel? Well, first of all, it was dealt with. It was dealt with in the board's decision in matter of Garcia-Azugaray, which was decided in 1986. Furthermore, under the rule of lenity, any ambiguity in the statute must be construed in the noncitizen's favor. In matter of Simrico, as well as the recent decisions in Romanishna and Gutnick, those Therefore, none of – therefore, Mr. Dang's attorney should have made the argument because an ambiguous statute would have had to be construed in his client's favor. At the time, none of these decisions were made. There was no precedent to deter him from making an argument based on the clear language or, at a minimum, the ambiguous language of the statute. Here's – so let's – we have pending in this court at least one case on the merits of that question, other than this one, I believe. Which is precedent over this one. If that case is to hold – were to hold – I don't know what it's going to hold, but were to hold, as the other courts have held, i.e., that there is no such argument, would there therefore be a lack of prejudice and that would be the end of the matter? i.e., should we wait for the other case? No, Your Honor, because his effective inassistance has to be evaluated at the time. That's true, but then we have a prejudice question. It would really depend on the reasoning in that case and what arguments were raised. For example, in Somerico and in – actually, in the Third and Seventh Circuits, international law arguments were never made. So if there was a decision in this court, and I don't know what exact arguments were made in that case, but if that decision didn't cover all of the arguments that Mr. Deng is making or could make, then it would not – it should not deter – it should not prevent him from being able to pursue his own cases. And what that amounts to is we really can't decide this case until that one's decided. I disagree with that, Your Honor, because if he could make separate arguments that are not made in that case – I understand that, but when we know what that case is – has decided, then we'll know whether he had any chance of winning or not. And I just – I just also wanted to point out that in Somerico, the Board had specifically found that the cessation clause in Article 1C6 – 1C5 of the Convention, which pertains to changed country conditions applied, so that case is distinguishable from this case where there – none of the cessation clauses apply. So even that decision is not determinative of Mr. Deng's case. Okay. Thank you very much. Thank you for your argument. Good morning again, Your Honors. John Cunningham from the Department of Justice appearing on behalf of the Attorney General. I listened carefully to my colleague's remarks, and basically she flipped the order of arguments that she laid out in her brief. With respect to the ineffective assistance of counsel claim, in the petitioner's brief, they really led with this refugee theory. And to me, this was really interesting, because I'd never quite seen a case like this where an argument was made that counsel had been ineffective because he didn't think of a theory of law. And I did my best to research it, and I couldn't find a case that really dealt with this squarely. So that's why I wrote our brief, by suggesting to you that when you measure this kind of ineffectiveness, perhaps the standard ought to be, well, what guidance did counsel have? If the standard is to be that counsel is ineffective because he didn't think of a theory that some other lawyer coming along later saw. Well, there actually was a case, because I wrote it, about a month before he made this argument called Sun. Do you know the Sun case? No, Your Honor. Which did mention the refugee theory, and which didn't reach it in that instance, I think, because there had been non-exhaustion. But which did specifically lay out the argument, which he could have found. So the matter of Garcia, I don't know how to put it, Al Guzera or something. A board decision? Yeah. No, that was a board decision, Your Honor. That was out there at the time that Mr. Coghlan represented the alien? Because that's really, I mean, to me the question here is really, to borrow a phrase from a different context, what did Mr. Coghlan know and when did he know it? And if he is, if counsel is to be held ineffective for not making an argument that, even if Sun applies, Your Honor, and I confess I wasn't familiar with that one, certainly there was no board or judicial precedent which said that this theory holds up, that if someone is admitted to the United States as a refugee, you may not put him in removal proceedings until you terminate refugee status. Nobody had ever held that. And now we are getting circuit court. Do we have to have someone to have held that? Does there have to be a judicial opinion in order? Well, that's the question. And frankly, when I read, when I researched this case, I didn't know the answer. I still don't know the answer. Because it's the contrary saying out there either. That's right. That's right. So what's wrong with saying that that's something that should have been resolved? Well, then that is going to be a whole new standard for ineffective assistance of counsel claims, Your Honor, and I urge you not to do it. Those of us who deal with these issues, and certainly this court deals with them and my office deals with them, ineffective assistance of counsel claims is a cottage industry in immigration appeals. If you have nothing else to play, you play that card. And sometimes, certainly the claim is justified, the charge is justified. But not this time. Not on these theories. And certainly not on the refugee theory. Are we now to say that counsel to be effective, and the Supreme Court has instructed us that the standard is objective reasonableness, and you have to measure counsel's performance at the time he entered it. You have to put yourself in counsel's shoes. It doesn't matter what you might think of the refugee theory. It doesn't matter whether you like it, whether you think it's reasonable, whether you think it is a right result. That's not the standard. The standard is, was counsel so deleterious in his duty, in his representation of his client, in failing to make an argument that no judicial body at the judicial level or the administrative body had blessed. And we are suggesting to you that that ought to be, the answer ought to be no. With respect to 212C, well, we have here a situation where the alien, Mr. Dang, entered his guilty plea after the AEDPA amendments in May of 1996 and after the ARERA amendments in the fall of 1996. He went ahead and entered a guilty plea anyway. And Mr. Codman explained to the board that once he found out, he thought about making a 212C application. My colleague is right. He did say that he was going to do it. But then he explained to the board that when he realized when Mr. Dang had entered his guilty plea, he knew, and he was right, that that killed his 212C chances. That's consistent with the law of this circuit. The theory that he, Mr. Dang, is entitled to rely on the availability of suit section 212C relief at the time he committed his crime is contrary to the law of this circuit, as your questions to my colleague have already pointed out, not just Amendera-Santoya, but also Calaba. Make that plain. If you are, if you have done your, you will, the court will not accept the argument. Judge Cowan, you're right. The word used was absurd. The court will not accept the argument that when you committed your crime, you relied on, if I'm ever caught, if I'm ever, if I'm ever prosecuted, if I'm ever convicted, if I'm ever in the criminal justice system. I'm not taking up that. It wasn't a serious crime. He merely touched her improperly, but he didn't assault her, he. Yeah, there are two, there are. I mean, that's, that's not serious, but it's not, not particularly desirable, but. Right, and you, it's, it's, it's, it's, that's a two level question, your honor, was put out in our brief. First of all, Mr. Coggan explained to the board that I made a judgment call. He said I could see that the, that the immigration judge was really irritated by the fact that Mr. Dang continued to deny that he'd done it, that he continued to express no remorse. And I didn't think that this was something that I should pursue before the board. Now looking at it objectively, and you look at these also, we get them in criminal law all the time. And I gotta tell you something, any criminal lawyer looking at something like this would have said, this is not serious, I'll take it up. Well, and why can't we say, looking at this object, objectively I would say, this is not a serious crime, this is a crime, but it's not, it's not Ballam and Say, and so forth, or. You, you used before, your honor, in, in, in, in your conversation with my colleague, the word prejudice. Well, that's the second half of this question, because if the board, if the, if the if the if Mr. Cogman had taken the issue up before the board. And even if the board had agreed with Mr., Mr., with Mr. Dang's view of his crime. The next question is, well, what does that get Mr. Dang? What it gets him is a, a, a review of his applications for withholding and protection of the Convention Against Torture. And the point we make in our brief is that his case for protection and withholding was, was so weak that there was no ultimate practical prejudice. Visited upon Mr. Dang as a result of his lawyer's failure to take that issue up before the board. And the facts of that are really simple, they're really straightforward. The petitioner was. Obviously, I got your arguments right. You're saying that even though this was something he should have taken up, he shouldn't have taken it up because his long range aspects of 212C were, were, were bad. Not 212C, your honor. The, the importance of this issue to the petitioner was that if he got a board decision. And, and his claim, his claim of prejudice is that if he got a board decision reversing the immigration judge on the finding of whether his crime was particularly serious. He was no longer barred from pursuing withholding of removal to Vietnam and cat protection. Right. It's that form of relief that he's focusing on now, not section 212C. I'm saying. And my, my argument to you is that his case for withholding a cat protection was so But is that a separate, separate issue? No, it's, no, because, because, because ineffective assistance of counsel is ultimately grounded in due process concerns. And due process, the law of this circuit is clear, occurs. You have to, you have to. There's sort of a nice little technical question here, which is, as I understand it, we sort of have two standards for ineffective assistance. One where the representation is just poor, in which case we say that you have to demonstrate that there is some likelihood of success. And the other is where the issue is just not raised at all. It's just not there. You missed it. In which we say plausible, right? It has to be a plausible ground, and I gather we mean that's something less. So why, isn't this in the second category because the issue was, I mean, what you're asking us to do is to say, well, it's true that neither the IJ nor the board ever reached this question, i.e. the question you're saying there was no prejudice on. But because of the particularly serious crime issue, which was a barrier to it, and, but I'm going to predict that it was just so unlikely that it would prevail, but why doesn't the plausibility standard come in then? There was no barrier to them holding it. Do you understand what I'm asking? Yes, I do, Your Honor. And, yeah, the first half of cases is basically where the alien never got a chance to make a fair case before the immigration judge. His lawyer just missed evidence. Well, he did before the immigration judge, but it didn't before the BIA. He got a fair hearing. He got his hearing before the IJ. So that's not, it's not that kind of prejudice. But not on that issue, but not on the issue that you're saying that there was no prejudice on. Yes, but I think, I think that your analysis allows you to look at that, because ultimately you do have to make a determination of whether the immigration judge's, or I'm sorry, the lawyer's allegedly deficient performance visited a prejudice upon the petitioner. And I think you can look at the full record on that question and make that clear. But there was no barrier. I mean, if, for example, it had been true with regard to the withholding, that as it turned out, he didn't have, I don't know, there was some complete barrier to him getting withholding after he got through the particular series, not just a judgment call. Then I think you'd be right. But there's no barrier here. I mean, it's just a question of going through the facts. And the question is, is he entitled to have somebody do that? Well, the question is, was the lawyer wrong in making a judgment call? This is not a case where the lawyer forgot, could have pursued a theory of relief and didn't, could have put on witnesses and didn't, there was evidence available that he forgot to put on. All of that was done. Mr. Dang got a good hearing. The question is, you know, can the court second guess an attorney's judgment call to the point of saying this was ineffective, that if you had taken it up, who knows, the board might have gotten, might have given you the result you've taken. And this is an unusual case in the sense that for once you do have an explanation from the opposing counsel. But the explanation isn't the one that you're giving, isn't it, that he thought that? Right. Yes. My brief took the next step, which is ultimately you still have to look at prejudice.  But the issue is, given the particular way this finding by the immigration judge, which was not taken to the board, operates with respect to the kinds of relief that Mr. Dang was seeking. That's the key. What kind of relief was he seeking? And here it's withholding of removal and protection of the cat. And our argument to you is that when you look at the evidence that he wanted to put on, if he had gotten his chance, the evidence is so weak that there's no reason for you to find that he suffered an identifiable prejudice. My time is up. Thank you very much. Thank you, Your Honor. Thank you, counsel. The case of Dang v. Gonzalez is submitted. And we go to the third of these cases, Ledesma-Sandoval v. Gonzalez. Thank you, Your Honor.
judges: D.W. Nelson, Cowen , Berzon